IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

DEANGELO VEHICLE SALES, LLC,

    Plaintiff,

v.

                                    CASE NO.: 0:18-cv-61402

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

    Defendants.

_____/

## COMPLAINT

Plaintiff, DEANGELO VEHICLE SALES, LLC ("Plaintiff" or "DVS"), by and through undersigned counsel, hereby sues CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Defendant"), and in support thereof, states as follows:

## PARTIES

1. Plaintiff, DVS, is a Pennsylvania Limited Liability Company with address located at 9 Banks Avenue, McAdoo, PA 18237.

2. Defendant, CERTAIN UNDERWRITERS AT LLOYD'S LONDON ("UNDERWRITERS") are a group of certain Underwriters at Lloyd's, London whose syndicate numbers and proportions underwritten may be ascertained from HANLEIGH for the Insurance Policy (as later defined) at issue. UNDERWRITERS' address for service of process purposes is courtesy of: Mendes & Mount, 750 Seventh Avenue, New York, NY 10019.

## NATURE OF ACTION, JURISDICTION, AND VENUE

3. This is an action for Breach of Contract

4. This matter is within the jurisdiction of this Court pursuant to 28 U.S.C. §1332(a). The parties are diverse, and the amount in controversy exceeds $75,000.00.

5. Venue is proper within this District pursuant to Section 4 of the Certificate Provisions contained in the LOV Insurance Policy (as later defined) at issue, which states, in pertinent part: "It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States." As DVS is the Assured pursuant to the LOV Insurance Policy and as further explained below, and DVS has elected to bring suit within this district, and this Court maintains competent jurisdiction pursuant to 28 U.S.C. § 1332(a), it follows that the Southern District of Florida (Fort Lauderdale Division) is a permissible venue for this litigation.

## GENERAL ALLEGATIONS

6. On or around August 24, 2016, Thrivest Specialty Funding IIF, LLC ("TSF III"), Adrian Peterson ("PETERSON"), and UNDERWRITERS entered into Policy No. RCA███████ (the "LOV Insurance Policy") for the purpose of providing PETERSON with Professional Athlete Loss of Value Insurance. A true and correct copy of the LOV Insurance Policy is attached hereto as **Exhibit A**.

7. Specifically, the LOV Insurance Policy was issued to TSF III as the "Assured" and PETERSON as the "Insured," and was issued to cover "Accident and Sickness Permanent Total Disability." The term of the LOV Insurance Policy is from June 22, 2016 – March 22, 2017, and the Aggregate Limited of Indemnity provided pursuant thereto is Three Million Dollars (USD $3,000,000.00).

8. On August 27, 2017, TSF III and DVS entered into a Letter Agreement, whereby TSF III assigned and granted to DVS all rights, title, and interest TSF III may have in and to the LOV Insurance Policy. As a result thereof, DVS takes the place of TSF III as the "Assured" under the LOV Insurance Policy, and has all rights and interest originally granted to TSF III as a result thereof. A true and correct copy of the Letter Agreement is attached hereto as **Exhibit B**.

9. On September 18, 2016, PETERSON suffered a torn meniscus and lateral collateral ligament sprain during the third quarter of the Minnesota Vikings' 2016 NFL Week 2 matchup against the Green Bay Packers (information detailing injury attached hereto as **Exhibit C**). The Minnesota Vikings subsequently released PETERSON at the end of the 2016 NFL Season, thereby making him an unrestricted free agent heading into the 2017 NFL Season.

10. On June 8, 2017, PETERSON submitted a claim through Proof of Loss form for benefits under Section B of the LOV Insurance Policy for Loss of Value to UNDERWRITERS correspondent, Hanleigh Management, Inc. Section B of the LOV Insurance Policy states, in pertinent part, that PETERSON shall be covered:

> For his Aggregate Ascertained Loss, up to, but not exceeding the Limit of Indemnity, should the Insured not receive an Offer from a Professional American Football Team that Totals USD 12,000,000 or more of Compensation based on a 3 year contract (USD 4,000,000 per year irrespective of whether the contract is paid evenly over the number of years, for the purposes of this policy it is deemed to be paid evenly.)* or pro rata in the event of a short or longer duration contract.

Furthermore, the LOV Insurance Policy defines:

(i) Aggregate Ascertained Loss as "the difference between the Offer as stated in the insuring agreement and the actual Compensation included in the largest Offer made by a Professional American Football Team or pro rata if a shorter or longer term";

(ii) Compensation as "money, property, investments, loans, options, or anything else of value, whether or not in cash, regardless of when paid, including, but not limited to,

           Salary and Signing Bonus included in an Offer made by a Professional American Football Team, including, Performance, Roster, and Reporting Bonus"; and

(iii)    Offer as "a proposal to play Football for a Professional American Football Team made to the Insured or his agent / representative within the policy period or within 15 months thereafter and being after the date of Injury of Manifestation of Illness (being the subject of a claim) whether signed and agreed by the Insured or otherwise."

11.    PETERSON's claim of Loss of Value was based upon his signing of a two year / $7 Million contract with the New Orleans Saints ("New Orleans Saints Contract") on or before April 25, 2017.  Information summarizing compensation details contained in PETERSON's New Orleans Saints Contract is attached hereto as **Exhibit D**, and a true and correct copy of the New Orleans Saints Contract is attached hereto as **Exhibit E**.

12.    On June 16, 2017, Empirical Loss Management, LLC ("EMPIRICAL") – appointed by UNDERWRITERS to assist in the investigation and adjustment of PETERSON's claim – responded to PETERSON's Loss of Value claim seeking addition information regarding his injury suffered on September 18, 2016. A true and correct copy of EMPIRICAL's June 16, 2017 response is attached hereto as **Exhibit F**.

13.    On June 26, 2017, PETERSON responded to EMPIRICAL's request for additional information via the June 26, 2017 correspondence attached hereto as **Exhibit G**.

14.    On August 24, 2017, EMPIRICAL issued a Declination of Benefits / Coverage ("Declination Letter"), stating that no benefits were payable to PETERSON or DVS (as Assured) for PETERSON's Loss of Value claim because PETERSON was unable to prove that he sustained an Aggregate Ascertained Loss pursuant to his signing of the New Orleans Saints Contract. A true and correct copy of the Declination Letter is attached hereto as **Exhibit H**.

15. On September 12, 2017, PETERSON responded to EMPIRICAL's Declination of Benefits / Coverage with a Request to Review to be forwarded to the UNDERWRITERS, seeking review of the factors contemplated in issuing the Declination Letter and informing EMPIRICAL of PETERSON's decision to formally contest UNDERWRITERS' decision to deny benefits / coverage. A true and correct copy of the Request to Review is attached hereto as **Exhibit I**.

16. Moreover, the Request to Review informed EMPIRICAL that based upon PETERSON's interpretation of the definitions contained in the LOV Insurance Policy – specifically, PETERSON's interpretation of the terms (i) Compensation, and (ii) Aggregate Ascertained Loss – EMPIRICAL and/or UNDERWRITERS had misinterpreted the actual value of the New Orleans Saints Contract to be worth two years / $12.5 Million ($6.25 Million per season), when in actuality the New Orleans Saints Contract was worth two years / $7 Million ($3.5 Million per season). As stated in the Request to Review:

> Based upon the foregoing, it follows that the [New Orleans Saints] Contract carries a total guaranteed amount of only USD $3,500,000, and that Mr. Peterson may be released therefrom without further Compensation at any time during the Contract. Furthermore, according to numerous reports by NFL Insiders and experts with express knowledge of the interworking of NFL contracts, Mr. Peterson's Contract value is for two (2) years at USD $3,500,000 per season, or USD $7,000,000 in total…. **Thus, Mr. Peterson has sustained an Aggregate Ascertained Loss of USD $500,000 per year contained in the Contract, and the total amount payable to him under the [LOV Insurance] Policy is USD $1,000,000.** (emphasis added).

17. On September 25, 2017, Wilson Elser – a law firm retained by UNDERWRITERS to respond to PETERSON's Request to Review – responded to PETERSON's Request to Review, further denying benefits / coverage based on the same reasoning provided in EMPIRICAL's Declination Letter. A true and correct copy of the Wilson Elser letter is attached hereto as **Exhibit J**.

18. Based on the reasoning provided in the Declination Letter and the Wilson Elser letter, it appears that UNDERWRITERS have mischievously interpreted the relevant definitions contained in the LOV Insurance Policy in an effort to avoid providing benefits / coverage payable to PETERSON due to this injury sustained on September 18, 2016.

19. As UNDERWRITERS (through Hanleigh Management, Inc.) are the sole drafters of the LOV Insurance Policy, all interpretations are to be construed against them; as a result, interpretation of the LOV Insurance Policy in the manner most favorable to PETERSON and DVS is required.

20. Importantly, while the LOV Insurance Policy defines Compensation as money included in an Offer regardless of when paid, it does not state, "regardless of if paid." This, coupled with the fact Aggregate Ascertained Loss is defined as the difference between the Offer and the actual Compensation included in the largest Offer, lends to the interpretation adopted by PETERSON that Compensation – and therefore calculation of Aggregate Ascertained Loss – is contingent on the Compensation actually delivered, earned, and/or received by PETERSON under the terms of the New Orleans Saints Contract.

21. On October 10, 2017, the New Orleans Saints traded PETERSON to the Arizona Cardinals, which subsequently released PETERSON at the end of the 2017 NFL Season on March 12, 2018.

22. As a result, PETERSON played only one (1) year under the New Orleans Saints Contract, and was paid a total of $3.5 Million thereunder, thereby rendering him eligible for coverage under the LOV Insurance Policy.

23. All conditions precedent to the filing of this Complaint have been completed and/or waived.

## COUNT I – BREACH OF CONTRACT

24. TSF hereby incorporates by reference Paragraphs 1-22 of the Complaint as if fully set forth herein and further alleges as follows:

25. This is a count for breach of contract against UNDERWRITERS.

26. The LOV Insurance Policy provides Loss of Value coverage for injury sustained during the coverage period (i.e. June 22, 2016 – March 22, 2017).

27. PETERSON suffered a torn meniscus and lateral collateral ligament sprain on September 18, 2016, which date falls within the coverage period. As a result of the injury, PETERSON was forced to undergo surgery, missed a significant amount of playing time, incurred a significant decrease in production, and was subsequently released by the Minnesota Vikings at the end of the 2016 NFL Season.

28. While PETERSON eventually signed the New Orleans Saints Contract, as detailed in PETERSON June 26, 2017 correspondence delivered to EMPIRICAL and PETERSON's Request to Review provided to UNDERWRITERS, the actual value of the New Orleans Saints Contract was two years / $7 Million (i.e. $3.5 Million per season). Furthermore, PETERSON was released from the New Orleans Saints Contract upon the conclusion of the 2017 NFL Season, thereby only earning $3.5 Million thereunder for the total term thereof.

29. The LOV Insurance Policy states benefits will be paid to PETERSON in the event he signs a NFL Contract for value less than $4 Million per season. Because the actual value of the New Orleans Saints Contract was for less than $4 Million per season – specifically, $500,000 less per season – the LOV Insurance Policy is required to cover the difference.

30. As a result, PETERSON is owed $500,000 per the terms and conditions set forth in the LOV Insurance Policy, and UNDERWRITERS failure and/or refusal to make payment of such amount constitutes a breach thereof.

31. As Assured, DVS has a financial interest in the bringing of this lawsuit against UNDERWRITERS for the enforcement of the LOV Insurance Policy. Thus, as a direct and proximate result of UNDERWRITERS failure to provide coverage as required by the LOV Insurance Policy, DVS has suffered damages.

**WHEREFORE**, Plaintiff, DEANGELO VEHICLE SALES, LLC, hereby demands judgment against UNDERWRITERS in the amount of $500,000.00, plus interest and such other and further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, DEANGELO VEHICLE SALES, LLC demands trial by jury on all issues so triable.

DATED this 21st day of June 2018.

**HEITNER LEGAL, P.L.L.C**
*Attorney for Plaintiff*
215 Hendricks Isle
Fort Lauderdale, FL 33301
Phone: 954-558-6999
Fax: 954-927-3333

By: _____
DARREN A. HEITNER
Florida Bar No.: 85956
Darren@heitnerlegal.com